# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY V. PINSON, | Case No. EDCV 08-0660-AHS (JTL) |
| Plaintiff, | MEMORANDUM AND ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |
| v. | |
| J.L. NORWOOD, et al., | |
| Defendants. | |

On October 14, 2008, Jeremy V. Pinson ("plaintiff"), a prisoner proceeding pro se and in forma pauperis, filed a First Amended Complaint pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) ("First Amended Complaint").[1]

In accordance with the terms of the Prison Litigation Reform Act of 1995 ("PLRA"), the Court has screened the First Amended Complaint before ordering service to determine whether the action (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c)(1); 28 U.S.C. § 1915(e)(2)(B).

The Court's screening of plaintiff's First Amended Complaint under the foregoing statutes are governed by the following standards. A complaint may be dismissed as a matter of law for

---

[1] Plaintiff filed a Notice of Voluntary Dismissal of his original complaint on May 28, 2008.

failure to state a claim for two reasons: (1) the plaintiff fails to state a cognizable legal theory or (2) the plaintiff has alleged insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Because plaintiff is appearing pro se, the Court must construe the allegations of the Complaint liberally and must afford plaintiff the benefit of any doubt. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). Moreover, in determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment. Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

After careful review and consideration of the First Amended Complaint under the relevant standards, and for the reasons discussed below, the Court finds that plaintiff has failed to state a claim upon which relief may be granted and **ORDERS** the **FIRST AMENDED COMPLAINT DISMISSED WITH LEAVE TO AMEND.**

**ALLEGATIONS OF THE FIRST AMENDED COMPLAINT**

Plaintiff is currently incarcerated at the Joe Corley Detention Center in Conroe, Texas. (First Amended Complaint at 1). Plaintiff's claims arose while he was incarcerated at the United States Penitentiary in Victorville, California ("USP Victorville"). (Id. at 2). Defendants are the following federal officials: J.L. Norwood, Warden at USP Victorville; C. Jackson, Unit Manager at USP Victorville; V. Graham, Senior Officer at USP Victorville; Pablo Prieto, Correctional Counselor at USP Victorville; Harley Lappin, Director of the Federal Bureau of Prisons ("BOP") in Washington, D.C.; and Delbert Sauers, Chief of the Designation and Sentence Computation Center in Grand Prairie, Texas. (Id. at 1-2). Plaintiff sues all six defendants in their official as well as individual capacities. (Id.).

Plaintiff alleges that he was previously confined in the Oklahoma Department of Corrections. (Id. at 2). Plaintiff alleges that, in May 2006, he assisted law enforcement officials

by testifying against another inmate confined in the Oklahoma Department of Corrections. (First Amended Complaint at 2).

Plaintiff alleges that, in June 2006, he was removed from the custody of the Oklahoma Department of Corrections on a writ of habeas corpus ad prosequendum and placed in the custody of the United States Marshal's Service. (Id.). The sentence for which plaintiff was in custody at the Oklahoma Department of Corrections was discharged on November 17, 2006, while plaintiff was in federal custody. (Id. at 2-3).

On April 2, 2007, plaintiff was sentenced to a term of twenty (20) years imprisonment in the BOP pursuant to convictions he sustained in the United States District Court for the Western District of Oklahoma. (Id. at 3). Plaintiff was initially confined at the United States Penitentiary in Beaumont, Texas ("USP Beaumont"). (Id.). Following a transfer request by prison officials, plaintiff was transferred to the United States Penitentiary in Florence, Colorado ("USP Florence"). (Id.). Plaintiff alleges that he was placed in segregation after spending eleven (11) days in the general prison population at USP Florence. (Id.). Plaintiff alleges that, while he was in segregation, he began utilizing the Administrative Remedy Program to seek protection from prison officials due to his history of assisting law enforcement and the threat thereby posed to his safety from fellow inmates. (Id.).

Plaintiff alleges that, despite his multiple filings for administrative remedies, prison officials transferred him to USP Victorville on February 14, 2008. (See id.). Plaintiff alleges that he was assaulted by two inmates within a month of his arrival at USP Victorville, but was not segregated following the assault. (See id.). After the assault, the Administrative Response to his final appeal regarding his requests for protection due to his previous assistance to law enforcement and his sexual orientation was returned to USP Victorville. (See id.). Plaintiff alleges that his counselor, Pablo Prieto, provided the Administrative Response to plaintiff's cellmate. (Id.). Plaintiff alleges that upon reading that plaintiff had assisted law enforcement, his cellmate provided the Administrative Response to inmates at the prison. (Id.). Plaintiff alleges that, on April 9, 2008, five inmates entered his assigned cell and stabbed him several times and kicked him with hard-toed boots. (Id.). He alleges that the April 9, 2008 assault left

him with permanent scars upon his face, scalp and arms, and caused severe pain for several weeks due to bruising of his bones in his left forearm. (First Amended Complaint at 5). Plaintiff also alleges that he suffers from a constricted nasal passage as a result of injuries to his nose, and he sustained a back injury, which has resulted in severe lower back pain since the assault. (Id.).

Plaintiff alleges that, prior to his transfer to USP Victorville, he alerted defendant BOP Director Harley Lappin that he faced a substantial risk of harm due to his previous assistance to law enforcement and his sexual orientation via his Central Office Administrative Remedy Appeal 472128-A1. (First Amended Complaint at 3). Plaintiff alleges that, despite his knowledge of plaintiff's request for protection and the reasons therefor, defendant Lappin did nothing to protect plaintiff and placed him in danger by permitting his transfer the USP Victorville. (See id. at 4).

Plaintiff alleges that defendant Delbert Sauers, Chief of the Designation and Sentence Computation Center in Grand Prairie, Texas, knew of plaintiff's previous assistance to law enforcement and knew or should have known that transferring plaintiff to USP Victorville would place plaintiff in imminent danger. (Id. at 5). Plaintiff alleges that, despite this knowledge, defendant Sauers designated plaintiff for confinement at USP Victorville, thereby subjecting plaintiff to a minor assault and a later murder attempt. (Id.).

Plaintiff alleges that defendant Warden J.L. Norwood knew of the March 2008 assault upon plaintiff at USP Victorville, but did nothing to segregate plaintiff from the gang members who had assaulted him. (Id. at 4). Plaintiff alleges that defendant Norwood knew or should have known that plaintiff's safety was jeopardized by his continued housing among the general population at USP Victorville, and, knowing the dangers plaintiff faced, subjected plaintiff to an environment wherein inmates attempted to murder plaintiff. (Id.).

Plaintiff alleges that defendant Pablo Prieto, his correctional counselor at USP Victorville, had a duty to handle his Central Office Administrative Remedy Appeal Response, which was sensitive and clearly would endanger plaintiff if given to other inmates. (Id. at 4). Plaintiff alleges that defendant Prieto did not provide the document directly to plaintiff. (Id.). Plaintiff

4

alleges that defendant Prieto knew or should have known that plaintiff would be placed in imminent danger by providing the Administrative Response to another inmate, but did so anyway, which resulted in an attempt to murder plaintiff. (First Amended Complaint at 4).

Plaintiff alleges that, as Unit Manager of plaintiff's assigned unit at USP Victorville, defendant C. Jackson had a duty to ensure that the building was equipped with functional security devices. (Id.). Plaintiff alleges that he was assigned to cell 218 in housing unit 6B, the only cell in the unit in which a duress alarm necessary to alert staff of an event requiring an emergency response had never been installed. (Id.). Plaintiff alleges that defendant Jackson knew that no duress alarm was installed in plaintiff's cell. (Id.). He further alleges that defendant Jackson did not comply with requests to install a duress alarm, which exposed plaintiff to additional harm on April 9, 2008, when he was brutally assaulted and had no means to alert staff despite his screams for help. (Id. at 4-5).

Plaintiff alleges that Senior Officer V. Graham was assigned to monitor plaintiff's housing unit at the time of the April 9, 2008 assault, but had stepped outside the unit without leaving another officer to monitor the unit during the assault. (Id. at 5). By leaving the unit unmanned, defendant Graham could not hear plaintiff's screams for help, and there was no other BOP employee there to hear plaintiff's screams and intervene on his behalf. (Id.).

Plaintiff asserts claims against defendants under the Eighth Amendment. (First Amended Complaint at 3-5). Plaintiff seeks relief in the form of compensatory and punitive damages. (Id. at 6).

## DISCUSSION

### I. PLAINTIFF CANNOT ASSERT A *BIVENS* CLAIM AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES

In the First Amended Complaint, plaintiff has listed defendants in their official as well as individual capacities. (First Amended Complaint at 1-2).

As a sovereign power, the United States may be sued only to the extent that it has waived sovereign immunity and expressly consented to suit. See Federal Deposit Ins. Corp.

v. Meyer, 510 U.S. 471, 475 (1993); Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th Cir. 1985) ("It is well settled that the United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued."). The United States has not waived sovereign immunity with respect to constitutional claims. Rivera v. United States, 924 F.2d 948, 951 (9th Cir. 1991). Thus, an individual may not maintain a Bivens[2] action against the United States or its agencies. See Meyer, 510 U.S. at 484-85; see also Nurse v. United States, 226 F.3d 996, 1004 (9th Cir. 2000) ("Appellant cannot state a claim against the federal officers in their official capacities unless the United States waives its sovereign immunity."). Bivens claims against defendants in their official capacities are, in essence, claims against the United States. Gilbert, 756 F.2d at 1458. It follows that "a Bivens action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity[.]" Daly-Murphy v. Winston, 837 F.2d 348, 355 (9th Cir. 1987); see also Vaccaro v. Dobre, 81 F.3d 854, 856 (9th Cir. 1996) ("[A] Bivens action is, by definition, against defendants in their individual and not their official capacity.").

Plaintiff, therefore, cannot pursue a Bivens claim against defendants in their official capacities. Accordingly, these claims must be dismissed.

## II. PLAINTIFF HAS FAILED TO STATE AN EIGHTH AMENDMENT CLAIM AGAINST DEFENDANTS LAPPIN, SAUERS, NORWOOD, PRIETO, JACKSON AND GRAHAM

Plaintiff asserts claims against defendants Lappin and Sauers based on their failure to protect him from danger due to his previous assistance to law enforcement and his sexual orientation by designating and permitting his transfer to USP Victorville. (See First Amended Complaint at 3-4, 5). Plaintiff's claim against defendant Prieto is based upon defendant allegedly providing plaintiff's Administrative Response to plaintiff's cellmate, rather than plaintiff. (Id. at 4). Plaintiff's Eighth Amendment claim against defendant Jackson is based upon defendant's alleged failure to install a duress alarm in plaintiff's cell and exposing plaintiff to

---

[2] Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

1 harm during the April 9, 2008 assault. (First Amended Complaint at 4-5). Finally, plaintiff
2 alleges that defendant Graham left plaintiff's housing unit unsupervised during the April 9, 2008
3 assault and failed to hear plaintiff's screams for help. (First Amended Complaint at 5).

4      A prison official's deliberate indifference to a substantial risk of serious harm to an
5 inmate's safety violates the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 827 (1994);
6 Redman v. County of San Diego, 942 F.2d 1435, 1443 (9th Cir. 1991) (en banc). In order to
7 show deliberate indifference, a prisoner must show that prison officials were aware of facts from
8 which they could infer that a substantial risk of serious harm existed and that the prison officials
9 drew that inference. Farmer, 511 U.S. at 837. A prisoner need not show that prison officials
10 acted or failed to act believing that harm would actually occur; rather, a prisoner need only
11 establish that officials acted or failed to act despite knowledge of substantial risk of serious
12 harm. Id. at 842.

13      Here, plaintiff alleges that while he was in segregation at USP Florence, he began using
14 the Administrative Remedy Program to seek protection from prison officials due to his history
15 of assisting law enforcement and the threat thereby posed to his safety from his fellow inmates.
16 (See First Amended Complaint at 3). Plaintiff alleges that he alerted defendant Lappin to the
17 fact that he faced a substantial risk of harm due to his previous assistance to law enforcement
18 and his sexual orientation via a Central Office Administrative Remedy Appeal. (Id.). Prison
19 officials nevertheless transferred plaintiff to USP Victorville on February 14, 2008, despite
20 plaintiff's multiple filings for administrative remedies. (See id.). Plaintiff alleges that he was
21 assaulted by two inmates within a month of his arrival at USP Victorville, in March 2008. (See
22 id.). Thereafter, defendant Prieto provided the Administrative Response to plaintiff's final
23 appeal to plaintiff's cellmate. (See id.). Plaintiff alleges that upon reading that plaintiff had
24 assisted law enforcement, his cellmate provided the Administrative Response to inmates at the
25 prison. (Id.). On April 9, 2008, five inmates entered plaintiff's assigned cell and stabbed him
26 several times and kicked him with hard-toed boots. (Id.). Plaintiff claims that defendant Lappin
27 did nothing to protect him and placed him in danger by permitting his transfer to USP Victorville.
28 (See id. at 4). Plaintiff, however, does not specifically allege why he was assaulted in March

2008, following his arrival at USP Victorville. Nor does plaintiff allege that defendant Lappin knew or inferred that plaintiff would face a substantial risk of serious physical harm from inmates at USP Victorville due to his assistance to law enforcement and his sexual orientation, but nonetheless permitted the transfer.

Plaintiff's allegations also fail to establish that defendant Sauers intentionally designated plaintiff for transfer to USP Victorville despite knowing that plaintiff would face a substantial risk of serious harm from inmates at USP Victorville due to his assistance to law enforcement. Plaintiff alleges that defendant Sauers knew of plaintiff's prior assistance to law enforcement and "knew or should have known" that his transfer to USP Victorville would place him in imminent danger, but nonetheless subjected plaintiff to a minor assault and a later murder attempt by designating plaintiff for transfer to USP Victorville. (See First Amended Complaint at 5). But, plaintiff does not allege any facts to support a claim that defendant Sauers actually knew or specifically inferred that plaintiff would face a substantial risk of serious physical harm from USP Victorville inmates due to his prior assistance to law enforcement if he was transferred to USP Victorville, and that he nevertheless designated plaintiff for the transfer. Plaintiff's mere assertion that defendant Sauers "should have known" that the transfer would place him in imminent danger is insufficient to establish deliberate indifference for Eighth Amendment purposes. See Farmer, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002) ("In order to know of the excessive risk, it is not enough that the person merely 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, []he must also draw that inference.' If a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk." (citation omitted)); Jeffers v. Gomez, 267 F.3d 895, 914 (9th Cir. 2001) ("[The Eighth Amendment standard for deliberate indifference] requires that the [prison] official be subjectively aware of the risk; it is not enough that the official objectively should have recognized the danger but failed to do so."); see also Farmer, 511 U.S. at 837 ("[A]n official's

failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.").

With respect to defendant Norwood, Warden at USP Victorville, plaintiff alleges that defendant knew of the March 2008 assault upon plaintiff, but failed to segregate him from the gang members who had assaulted him. (First Amended Complaint at 4). Plaintiff alleges that defendant Norwood knew or should have known that plaintiff's safety was jeopardized by his continued housing among the general population at USP Victorville, and, knowing the dangers plaintiff faced, subjected plaintiff to an environment wherein inmates attempted to murder him. (Id.). A Bivens claim, however, cannot be premised solely upon respondeat superior liability. See Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1991). A supervisory official may be liable for a constitutional violation only if he or she was personally involved in the deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. See Redman v. County of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991). "Supervisors can be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." Cunningham v. Gates, 229 F.3d 1271, 1292 (9th Cir. 2000); Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (supervisor is liable only if he directly participated in or directed the violations, or knew of the violations and failed to prevent them).

Here, plaintiff does not allege that defendant Norwood personally participated in, acquiesced in, or caused plaintiff's continued housing among the general population at USP Victorville. Moreover, plaintiff has failed to state what facts defendant Norwood purportedly knew from which he could have inferred that a substantial risk of serious harm to plaintiff existed if plaintiff were placed in the general population. Instead, plaintiff's claim appears to rest solely on defendant Norwood's supervisory position as Warden of USP Victorville. Plaintiff, therefore, has failed to state a claim against defendant Norwood.

///

With respect to the April 9, 2008 assault upon plaintiff, plaintiff alleges that defendant Prieto, his correctional counselor at USP Victorville, provided plaintiff's Central Office Administrative Remedy Appeal Response, in which plaintiff requested protection, to plaintiff's cellmate. (First Amended Complaint at 3). Plaintiff alleges that, upon reading that plaintiff had assisted law enforcement, his cellmate gave the Administrative Response to inmates at USP Victorville. (Id. at 3). Thereafter, on April 9, 2008, five inmates entered plaintiff's cell, stabbing him several times and kicking him with hard-toed boots. (Id.). Plaintiff alleges that defendant Prieto had a duty to handle the Administrative Response, which was sensitive and clearly would endanger plaintiff if given to other inmates, but did not provide the document directly to plaintiff. (Id. at 4). Plaintiff alleges that defendant Prieto knew or should have known that plaintiff would be placed in imminent danger by providing the Administrative Response to another inmate, but did so anyway, which resulted in an attempt to murder plaintiff. (Id.). Plaintiff, however, does not specifically allege why he was assaulted on April 9, 2008. As such, plaintiff's allegations do not sufficiently establish that he was assaulted by other inmates as a result of defendant Prieto's actions or inactions. Thus, the Court finds that plaintiff has not adequately alleged an Eighth Amendment claim for deliberate indifference to his personal safety for giving plaintiff's Administrative Response to his cellmate.

Plaintiff also fails to state an Eighth Amendment claim against defendants Jackson and Graham. Plaintiff alleges that defendant Jackson knew that no duress alarm had been installed in plaintiff's cell and did not comply with requests to install an alarm, thereby exposing plaintiff to additional harm during the April 9, 2008 assault, because he had no means to alert prison staff. (See id. at 4-5). Plaintiff, however, must show that defendant Jackson actually knew of his risk of harm, yet disregarded that risk by failing to take reasonable steps to abate it. See Farmer, 511 U.S. at 847. Plaintiff's allegations do not establish that defendant Jackson knew there was a substantial risk of serious physical harm to plaintiff from other inmates if he did not install a duress alarm in plaintiff's cell.

Nor do plaintiff's allegations show that defendant Graham knew there was a substantial risk of serious physical harm by other inmates if she left plaintiff's housing unit temporarily

unsupervised. Plaintiff merely alleges that defendant Graham was assigned to monitor his housing unit at the time of the April 9, 2008 assault, but had stepped outside the unit without leaving another officer to monitor the unit. (First Amended Complaint at 5). Because the unit was unmanned, defendant Graham, or any other BOP employee, could not hear plaintiff's screams for help and intervene while he was being stabbed. (Id.). These allegations fail to state a claim against defendant Graham for deliberate indifference to plaintiff's safety. Even if the Court construed plaintiff's allegations as stating that defendant Graham should not have stepped outside the unit and left the unit unmanned, the allegations amount to no more than a claim of negligence on the part of defendant Graham. Deliberate indifference requires more than mere negligence by an official in performing her duties. Farmer, 511 U.S. at 835 (deliberate indifference is "a state of mind more blameworthy than negligence" and "Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"); Whitley v. Albers, 475 U.S. 312, 319 (1986) (Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety."); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005) ("'[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" (quoting Farmer, 511 U.S. at 835)).

Construing the allegations of the First Amended Complaint in the light most favorable to plaintiff, plaintiff's allegations fail to state an Eighth Amendment claim against defendants Lappin, Sauers, Jackson or Graham for acting with deliberate indifference to a substantial risk of harm to plaintiff's personal safety. Plaintiff's claims against defendants Lappin, Sauers, Norwood, Prieto, Jackson and Graham, therefore, must be dismissed.

\* \* \* \* \* \* \* \* \*

Because plaintiff may be able to cure the deficiencies of the First Amended Complaint by amendment, the Court will afford him an opportunity to attempt to do so. See Noll, 809 F.2d at 1448. The First Amended Complaint, therefore, is **DISMISSED WITH LEAVE TO AMEND**.

///

| | |
|---|---|
| 1 | If plaintiff desires to pursue this action, plaintiff is **ORDERED** to file a Second Amended Complaint within thirty (30) days of the date of this Order, remedying the deficiencies discussed above. If plaintiff chooses to file a Second Amended Complaint, it should bear the docket number assigned in this case; be labeled "Second Amended Complaint"; and be complete in and of itself without reference to the original complaint or any other pleading, attachment or document. The Clerk is directed to provide plaintiff with a blank Central District civil rights complaint form, which plaintiff will need to completely fill out and resubmit. |

**Plaintiff is admonished that, if he fails to timely file a Second Amended Complaint, the Court will recommend that the action be dismissed on the grounds set forth above and for failure to diligently prosecute.**

DATED: November 21, 2008

                                           /s/
                                    JENNIFER T. LUM
                                    UNITED STATES MAGISTRATE JUDGE